# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DANIEL NUETZEL,

           Plaintiff,

    v.                                       Case No. 07-C-1045

OSHKOSH TRUCK CORP.,

           Defendant.

## DECISION AND ORDER

One week after being observed in a position that looked like he was sleeping on the job, Neutzel was fired from his position at Defendant Oshkosh Truck Corp. He now asserts that his termination was the result of discrimination prohibited by the Americans With Disabilities Act, 42 U.S.C. § 1211. Both sides have moved for summary judgment and, for the reasons stated below, the Defendant's motion will be granted and the Plaintiff's denied.

## I. Background

Many of the essential facts are recounted below, as they pertain to the nature of Plaintiff's alleged disability. The context of Plaintiff's termination from Oshkosh Truck is straightforward. On April 27, 2006, Neutzel's supervisor Dan DeGreef received an anonymous tip that Neutzel was sleeping under a truck. (DPFOF ¶ 47.) DeGreef went to the scene and observed Neutzel lying motionless. Plaintiff asserts that the anonymous tipster was another employee with a grudge against him. He also states that he was lying motionless because he was waiting for solvent to dry, but DeGreef did not believe him and wrote him up for sleeping on the job. DeGreef prepared a report

for the human resources manager, Wayne Alexander, and a meeting was held on May 2, 2006 with Neutzel, his union rep, and other company officials. Alexander stated that he believed Neutzel was lying when he said he was not sleeping: "I know of nobody that would lay [sic] there motionless for minutes looking for leaks and the beam of light [Neutzel had a flashlight] never moves." (Dkt. # 21 at 49.) Alexander noted that this was not Neutzel's first employment infraction, and Neutzel was terminated for sleeping on the job.[1] The company notes that sleeping on the job is considered a serious infraction and that it has fired other employees for similar behavior.

## II. Analysis

As noted earlier, both sides have moved for summary judgment. Plaintiff has moved for partial summary judgment on the question of disability, the threshold issue in any ADA action. The Defendant has moved for summary judgment on all aspects of the ADA claims.[2] Although all of the components of the ADA claims have been briefed, in my view it makes the most sense to begin and end with the threshold question of disability. *Rooney v. Koch Air, LLC,* 410 F.3d 376, 381 (7th Cir. 2005) ("Although both the district court and Rooney focused their attention on the fourth element of the prima facie case, we think it preferable here to start with the first one: whether Rooney is 'disabled,' in the special sense that the ADA uses that term.")

---

[1]Much of the briefing is devoted to Neutzel's claim that Alexander and DeGreef fabricated the sleeping incident as a pretext for firing him. While my decision rests on other grounds, it is worth noting that it is undisputed that DeGreef received a tip that Neutzel (who was on medication for insomnia) was sleeping on the job and then observed Neutzel lying motionless for at least some period of time. Whether Neutzel was actually sleeping or not is immaterial – the question is whether the employer reasonably believed he was. Although resolution of the issue is fact-intensive and outside the bounds of this opinion, I note that under these circumstances it is far more reasonable to believe Neutzel was sleeping than that there was some sort of multi-party conspiracy to get him fired simply because he had a bad knee.

[2]Defendant's brief addressed a possible harassment claim, but Plaintiff has not argued such a claim and so I do not address it.

2

An individual can prove that he is disabled under the ADA by establishing that: 1) he has a physical or mental impairment that substantially limits one or more major life activities, 2) he has a record of such an impairment, or 3) he is regarded as having such an impairment by his employer. 42 U.S.C. § 12102(2)(A). Plaintiff proceeds under two of these three sections of the ADA. Specifically, he asserts that he was fired because he had a "record of" a disability and because his employer "regarded" him as having a disability.

**A. Record of Disability**

An individual may be considered disabled under the ADA if he has a record of a disability. That is, the individual must show that he has a record of a condition that "substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k); *Rooney,* 410 F.3d at 381. The EEOC has explained that the purpose of this clause is "to ensure that people are not discriminated against because of a history of disability" or "because they have been misclassified as disabled." 29 C.F.R. Pt. 1630, App. § 1630.2(k) (1997); *Duda v. Board of Educ. of Franklin Park Public School Dist. No. 84,* 133 F.3d 1054, 1058 (7th Cir. 1998).

Neutzel points to several medical records to which his employer had access as evidence that he had a record of a disability. All of these records relate to Plaintiff's knees.[3] For example, his employer had in its possession notes from Plaintiff's orthopedic surgeon indicating that constant crawling and prolonged kneeling could not be tolerated. The surgeon restricted Plaintiff from crawling on his knees and from repeated kneeling or climbing. An independent evaluation, conducted for Defendant's workers compensation carrier, concluded that Plaintiff had a 5-percent permanent partial disability rating in his left knee. An email between employees of the insurance

_____

[3]These records are summarized at pages 2 through 5 of Plaintiff's brief. (Dkt. # 23.)

3

company discussed certain of his work restrictions. Other records reiterated the fact that Plaintiff experienced knee pain and cited restrictions on Plaintiff's ability to kneel or crawl. Plaintiff also asserts that the human resources manager, Wayne Alexander, knew Neutzel "had a bad knee" and he further claims that his supervisor, DeGreef, stated that he "knew all about" Neutzel's work restrictions.

Oshkosh Truck disputes whether the relevant decision-makers actually had access to all of these documents, and Plaintiff spends significant efforts attempting to explain how the decision-makers must have known about his knee condition. I need not resolve this fact-intensive debate, however, because even assuming the decision-makers knew every detail about the Plaintiff's condition, it is clear that Plaintiff has not established that there was any record of an ADA disability, i.e., a condition that limited a major life activity. "[A]n employer's possession of records detailing injuries and surgeries does not mean that the employee is statutorily disabled." *Kampmier v. Emeritus Corp.,* 472 F.3d 930, 938 (7th Cir. 2007).

Plaintiff asserts that these records show he was restricted from crawling and kneeling, and that he was thus "substantially limited" in those activities. Under the regulations, he asserts, this means he was disabled. Plaintiff cites 29 C.F.R. § 1630.2(j)(1)(ii), which defines "substantially limited" as "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." Given the restrictions on kneeling and crawling resulting from Neutzel's knee condition, the regulation suggests that he was indeed substantially limited in the activities of kneeling and crawling. But of course that is not the end of the story. Plaintiff must still show that he is

4

substantially limited in a *major* life activity, and neither crawling nor kneeling constitutes a major life activity. *Gretillat v. Care Initiatives,* 481 F.3d 649, 654 (8th Cir. 2007) ("Even accepting, arguendo, that Gretillat's impaired knee substantially and permanently restricts her ability to crawl, kneel, crouch, and squat, these functions cannot meet the demanding standard required by *Williams* for us to consider them major life activities.") (citing *Toyota Motor Mfg. Co., Inc. v. Williams,* 534 U.S. 184 (2002)).

Instead of focusing on the limitations as they affect his ability to kneel or crawl, Plaintiff jumps to an assertion that these restrictions significantly limited him from engaging in the major life activity of *working*. Under 29 C.F.R. § 1630.2(j)(3)(i), to be substantially limited in the ability to work "means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Although working has been found by courts to be a major life activity under the ADA, *see Kupstas v. City of Greenwood,* 398 F.3d 609, 612 (7th Cir. 2005), the Seventh Circuit and the Supreme Court have made clear that merely being excluded from a small class of jobs does not mean an individual is disabled. Otherwise, limitations on non-major life activities (e.g. kneeling or crawling) could be transformed into major life activities merely by artful lawyering. That is, presumably any non-major physical limitations could be re-characterized as limitations on a plaintiff's ability to work, and a too-generous approach to such efforts would undermine Congress's intent to limit the ADA's applicability to only "major" life activities.

Plaintiff argues he was substantially limited from working because his knee condition prevented him from working for Defendant in tasks such as frame work, hood installation, installing

5

various components, or a number of other jobs that required kneeling or crawling. Further, he would not have been able to work as (for example) a carpenter, tile contractor, roofer, or any other job that would require frequent kneeling, climbing or crawling. But this list merely reflects the uncontested fact that Plaintiff is precluded from working in a specific subset of jobs that require kneeling, crawling or crouching. Jobs that require kneeling, etc., are not a "class" of jobs or a "broad range" of jobs. In short, the ADA does not allow a plaintiff to cherry pick an otherwise unrelated group of jobs he is excluded from and then claim that his restrictions substantially limit his ability to work because he cannot perform those jobs. *Baulos v. Roadway Exp., Inc.,* 139 F.3d 1147, 1152 (7th Cir. 1998) (truck driver was prevented from driving sleeper trucks, but not from driving most other kinds of trucks).

The conclusion that restrictions on kneeling and crawling generally do not substantially limit one's ability to work is borne out in cases involving lifting restrictions, which are common restrictions in the workplace. For example, the Seventh Circuit has doubted whether a restriction on lifting more than ten pounds could constitute a disability. See *Squibb v. Memorial Medical Center,* 497 F.3d 775, 782 (7th Cir. 2007) (citing *Mays v. Principi,* 301 F.3d 866, 869-70 (7th Cir. 2002)). A ten-pound lifting restriction is arguably a far more onerous limitation than a restriction on crawling or kneeling, as the need to lift items arises more frequently in everyday life and in the workplace than the need to crawl or kneel. *Ryburn v. Potter,* 155 Fed. Appx. 102, 110-111, 2005 WL 2476338, *6 (5th Cir. 2005) ("Because these medical restrictions affect only a narrow range of jobs requiring fine manipulation and heavy lifting, the district court correctly found that Ryburn was not substantially limited from the major life activity of working.") If lifting restrictions do not

6

substantially limit one's ability to work, it is difficult to see how a more narrow restriction on kneeling and crawling would.

Although the analogy to lifting restrictions is a strong one, my conclusion is borne out by cases involving knee injuries as well. For instance, in *Szalay v. Yellow Freight System, Inc.,* the plaintiff, a mechanic and maintenance person, alleged his knee injury substantially limited his ability to work. The Sixth Circuit disagreed. "[A]lthough Szalay's physician testified that Szalay had a physical impairment that prevented him from continually bending and climbing, he also testified that Szalay could perform most manual labor jobs that did not involve excessive bending of the knee." 1997 WL 650915, *3 (6th Cir. 1997). The same is true here. Nowhere in any of the voluminous records Plaintiff cites is there any medical restriction on working generally or on working in manual labor jobs that do not involve stress on the knees. *See also Bryson v. Regis Corp.,* 498 F.3d 561, 576 (6th Cir. 2007) (following knee injury, plaintiff "has not established that her medical condition bars her from working in all jobs within the cosmetology field, or that it prevents her from holding a large number of jobs in other categories of employment.")

Importantly, when working is the major life activity impacted, the "substantially limited" question is to be analyzed in light of the Plaintiff's particular training and education. 29 C.F.R. § 1630.2(j)(3)(i). Thus, where a truck driver has a knee problem that potentially limits his ability to drive a truck, that could constitute a substantial limitation in his ability to work. *Best v. Shell Oil Co.,* 107 F.3d 544, 548 (7th Cir. 1997) ("reasonable trier of fact could find that Best's bad knee substantially limited his ability to work as a truck driver.") But here, Plaintiff has not cited any particular training or education (e.g. a nursing degree or a trucking license) that would limit this analysis; instead, his jobs at Oshkosh Truck since 1983 have all involved general manual labor –

7

assembly, painting, repair, inspection. (DPFOF ¶ 7.) Because his records of medical limitations affect his ability to work at manual labor jobs requiring kneeling or crawling, they are not records of any substantial limits on his ability to work. *Kupstas*, 398 F.3d at 613 ("The impairments must 'substantially limit employment generally,' . . . not merely preclude an employee from performing 'either a particular specialized job or a narrow range of jobs.'" (citing 29 C.F.R. Pt. 1630, App. § 1630.2(j) and *Stein v. Ashcroft*, 284 F.3d 721, 725 (7th Cir. 2002))).[4] Accordingly, the Defendant is entitled to summary judgment on the "record of disability" claim.

## B. "Regarded as" Disabled

Plaintiff also proceeds under the "regarded as" prong of the ADA. The "regarded as" clause is intended to curb discrimination based on illogical or outdated animus towards what employers might "regard" as a disability. That is, even if an employee is not actually disabled, he is entitled to ADA protection if he is terminated because an employer believes he is disabled. To succeed in such a claim, the employee must show that his employer believed he was substantially limited in his ability to perform a major life activity. Here again, Neutzel cites the major life activity of working.

Unfortunately for Neutzel, his argument here meets the same fate as the argument he made above because it rests on the faulty premise that jobs requiring kneeling and/or crawling are a "broad class of jobs." As noted earlier, even assuming the decision-makers knew about all of

---

[4]Plaintiff also suggests he was limited in performing "manual tasks," but there is no record or history of any impairment relating to the use of his hands. He further asserts in a supplemental affidavit that he was also impaired in his ability to walk. But there do not appear to be any contemporaneous records of such an impairment; in other words, there was no record of difficulty walking while he was employed by Defendant. Moreover, it appears Plaintiff's evidence is that he now walks with a limp. But, as the Defendant notes, the Plaintiff's current condition is irrelevant to whether he was ADA-disabled at the time of his firing.

8

Plaintiff's medical limitations, and assuming that HR manager Alexander knew Plaintiff had "a bad knee," that information merely suggested that he would have difficulty flexing his knees or crawling for any extended period of time. This does not rise to the level of an ADA disability.[5]

In addition to the medical records already described, the only other evidence of the employer's state of mind is a letter written by the company's human resources manager (and a company attorney) to the Wisconsin Equal Rights Division. This letter was drafted in response to Neutzel's ERD complaint, and in it the company states that "[f]or purposes of this response, [Defendant] does not dispute that [Plaintiff] has a disability."[6] Plaintiff makes much of this letter, but it is hard to see how it deserves anything more than a footnote. First, the letter to the ERD is entirely conditional: "for purposes of this response . . ." In other words, the company was making clear that it was *not* intending to make any binding or substantive concessions whatsoever. Moreover, the letter was addressing Plaintiff's claims under Wisconsin law, which, as Defendant points out, is far different than the ADA. The relevant Wisconsin statute states: "'Individual with a disability' means an individual who: (a) Has a physical or mental impairment which makes achievement unusually difficult or limits the capacity to work; (b) Has a record of such an impairment; or (c) Is perceived as having such an impairment." Wis. Stat. § 111.32(8); *Erickson v. Labor and Industry Review Com'n,* 2005 WI App 208, 287 Wis.2d 204, 212, 704 N.W.2d 398,

---

[5]Plaintiff does not argue that the decision-makers believed his condition was *worse* than the records showed. Some "regarded as" claims are based on the employer's misunderstanding of an employee's condition, but Plaintiff's claim is simply based on the medical records and other opinions about his knees discussed herein.

[6]Both sides cite this letter, but it is unclear where or whether it actually appears in the record. Neither side has cited any affidavits, declarations or exhibits to which the letter might actually be attached.

402 (Wis. Ct. App. 2005). Thus, even if the letter were intended to make some sort of substantive concession, it was a concession to a point largely unrelated to the question of whether Plaintiff was disabled under the federal ADA. Accordingly, the letter has little, if any, relevance to whether the employer believed Plaintiff was *substantially* limited in his ability to perform any major life activity. Because there is no evidence that any of the decision-makers believed Plaintiff was substantially limited in engaging in any major life activities, the Defendant is entitled to summary judgment on Plaintiff's "regarded as" claim as well.

**III. Conclusion**

Because I have concluded that there is no evidence of a record of a disability or that the employer regarded Plaintiff as having a disability, the Defendant is entitled to summary judgment. Plaintiff's motion for summary judgment and motion to file a sur-reply are **DENIED**[7]; the Defendant's motion for summary judgment is **GRANTED**. The case is **DISMISSED**, and the Clerk is directed to enter judgment accordingly.

**SO ORDERED** this 17th day of June, 2009.

s/ William C. Griesbach
WILLIAM C. GRIESBACH
United States District Judge

---

[7]The proposed sur-reply relates to the reasons for Neutzel's firing rather than the question of disability.

10